**IN RE: Alan WOLF, Debtor.**

**Bky. No. 15-10768 ELF**

United States Bankruptcy Court,
E.D. Pennsylvania.

Signed October 11, 2016

Erik B. Jensen, Erik B. Jensen, Esquire, Philadelphia, PA, for Debtor.

### ORDER

ERIC L. FRANK, CHIEF U.S. BANKRUPTCY JUDGE

**AND NOW WHEREAS:**

A. Edward Jordan ("Jordan") filed a proof of claim (Claim No. 4) ("the Claim") in this chapter 13 bankruptcy case in the amount of **$85,186.89.**

B. The Debtor filed an objection to the allowance of the Claim.

C. Pursuant to the court's Order dated **January 7, 2016** ("the Escrow Order") (Doc. # 82), the Debtor's counsel is holding the sum of **$100,000.00** in an escrow account ("the Escrow Funds").

D. Paragraph 5 of the Escrow Order provides that the Debtor's counsel shall hold the funds in escrow "until the validity of [the Claim] is adjudicated and ruled upon."

E. Subsequently, on **March 8, 2016**, the court entered an order confirming the Debtor's Third Amended Chapter 13 Plan ("the Plan"). (See Doc. #'s 93, 107).

F. Paragraph 4.B. of the Plan provides that no disbursements will be made on account of Jordan's claim until the court "rules on" the pending objection to the Claim.

G. Paragraph 4.C of the Plan provides that the Debtor's counsel (as escrow agent) "will hold" the funds in escrow until the claim objection "is decided."

H. Paragraph 4.C of the Plan addresses the effect of a ruling allowing Jordan's claim, providing: if Jordan's claim is "held to be valid, Debtor's counsel shall (within 10 days) tender the necessary funds to the Chapter 13 Trustee."

I. The Plan is silent on the consequence of a bankruptcy court ruling disallowing the Claim.

\* \* \* \* \* \*

J. By Order dated **September 15, 2016**, the court entered a memorandum and order disallowing the Claim ("the Disallowance Order") (Doc. # 141).

K. On **September 29, 2016**, Jordan filed a notice of appeal of the Disallowance Order to the district court. (Doc. # 145).

\* \* \* \* \* \*

L. On **September 29, 2016**, Jordan filed an Expedited Motion for Entry of an Order: (I) Staying Order Pending Appeal; (II) Prohibiting Disbursement of Escrow Pending Final Resolution of Appeal; and (III) Granting Related Relief ("the Motion") (Doc. # 146).

M. On **October 4, 2016**, the court held a hearing on the Motion.

N. The Debtor appeared at the hearing on the Motion and opposed the entry of an

order prohibiting his attorney from distributing the Escrow Funds to him.

O. At the hearing, both parties focused their respective arguments on the meaning of the Escrow Order, rather than Paragraph 4.C. of the Plan.

P. The Debtor argued that the Disallowance Order effected the adjudication of and ruling on the validity of the Claim within the meaning of the Escrow Order and therefore, the Debtor's counsel may now release the Escrow Funds to the Debtor.

Q. Jordan argued that:

(1) the Escrow Order was intended to maintain the escrow until a bankruptcy court order allowing or disallowing the Claim was final and no longer subject to modification or reversal on appeal;

(2) therefore, the escrow should be maintained pending appeal; and

(3) the Escrow Order, by its own terms, should be enforced by the entry of an order prohibiting distribution of the Escrow Funds to the Debtor pending the outcome of the appeal.

R. Alternatively, Jordan argued that, even if the Escrow Order was not intended to maintain the escrow in place until the allowance or disallowance of the Claim was determined by a final, non-appealable order, the court should impose a stay on distribution of the Escrow Funds based on traditional grounds for the grant of a stay of a court order pending appeal.[1]

\* \* \* \* \* \*

S. After considering the parties' arguments and the record, the court has concluded that the "operative" document in this contested matter is the Plan, not the prior Escrow Order.[2]

---

1. The bankruptcy court has the authority to grant a stay pending an appeal of its order. See Fed. R. Bankr. P. 8007. It is well settled that courts consider the following factors in determining whether to grant a stay pending appeal:

(1) whether the appellant has made a strong showing of the likelihood of success on the merits;
(2) whether the appellant will suffer irreparable injury absent a stay;
(3) would a stay substantially harm other parties with an interest in the litigation; and
(4) whether a stay is in the public interest.
E.g., In re Revel AC, Inc., 802 F.3d 558, 565 (3d Cir. 2015).

The Court of Appeals recently provided a detailed instructions on how these factors should be analyzed:

To sum up, all four stay factors are interconnected, and thus the analysis should proceed as follows. Did the applicant make a sufficient showing that (a) it can win on the merits (significantly better than negligible but not greater than 50%) and (b) will suffer irreparable harm absent a stay? If it has, we balance the relative harms considering all four factors using a sliding scale

approach. ... [D]epending on how strong a case the stay movant has on the merits, a stay is permissible even if the balance of harms and public interest weigh against holding a ruling in abeyance pending appeal.
Id. at 571 (quotation marks omitted).

In Revel, the court explained how the "sliding scale" approach works. The necessary level or degree of likelihood of success varies according to the court's assessment of the other stay factors. The more likely the appellant is to prevail on appeal, the less the movant must demonstrate that the balance of harms weigh in its favor; the less likely movant is to prevail on appeal, the more the balance of harms must weigh in its favor. See id. at 569.

2. The Escrow Order and Paragraph 4.C. of the Plan address the same subject: the event that terminates the obligation to maintain the escrow account. The confirmation order was entered months after the Escrow Order. To the extent that the Plan may differ from the Escrow Order, the parties are bound by the terms of the Plan. See 11 U.S.C. § 1327(a). Therefore, the Plan controls.

T. Further, the court finds that the Plan provided for the maintenance of the Escrow Funds **only through the initial determination by the bankruptcy court** whether Jordan's Claim should be allowed or disallowed.[3]

3. The question presented is whether the Plan requires that the Escrow Funds be maintained only through the bankruptcy court ruling or whether the escrow requirement remains in effect until all appeals are exhausted. The parties disagree on the meaning of the Plan. (Their respective arguments regarding the meaning of the Escrow Order largely can be applied to the interpretation of Paragraph 4.C. of the Plan).

Many courts have employed the legal precept that a chapter 13 plan is a court-sanctioned contract that binds the chapter 13 debtor and his or her creditors and that in construing a confirmed plan of reorganization, courts apply contract principles. E.g., In re Stuart, 402 B.R. 111, 126 (Bankr. E.D. Pa. 2009) (citing cases). Those principles may be summarized as follows:

- the rules of contract interpretation applied are those of the state in which the plan was confirmed;
- under Pennsylvania law, if the intent of the parties to a written contract is clear from the writing itself, there is no need to consider extrinsic evidence;
- if, however, a written contract is ambiguous, the parties may offer extrinsic evidence to clarify its meaning;
- a provision in the contract is ambiguous if it is reasonably susceptible to different meanings;
- in interpreting the meaning of an ambiguous contract provision, after consideration of the extrinsic evidence, the court may consider various principles or tools of contract interpretation.

In re The Aspen St. Corp., 405 B.R. 767, 775–76 (Bankr. E.D. Pa. 2009) (citing authorities).

The Debtor largely relies on a "plain language" argument: that, in the absence of any further qualifying language, the text of the Plan refers to maintenance of the Escrow Funds only until the ruling and decision by the bankruptcy court (and no longer). The Debtor asserts that the language is unambiguous on that point. Conversely, Jordan contends that, when considered in context, the phrases requiring that the escrow will be maintained until the validity of the disputed Claim is "decided" or "ruled on" or "held" to be valid all connote and include the concept of finality, i.e., no longer subject to further appeal. At the hearing, the parties offered no extrinsic evidence in support of their competing interpretations of Paragraph 4.C of the Plan.

As I stated at the hearing on the Motion, both sides have made plausible arguments in support of their respective positions. After studying the text of the Plan, I conclude that the Debtor has the better argument.

To the extent that the words "rules on" in Paragraph 4.B. and "decided" and "holds" in Paragraph 4.C of the Plan may be ambiguous, I find that there is a textual clue in the Plan that clarifies the meaning.

Footnote 1 of the Plan, which is a footnote to Paragraph 1.B, explains that the total plan funding of either $132,000.00 or $225,500.00 will be determined by the outcome of the hearing on the Debtor's claim objection, "scheduled to be heard by this Court on 3/7/2016." The same word, also capitalized ("Court") is employed in Paragraph 4.A., which provides that all filed unsecured claims approved by "the Court" shall receive a 100 percent distribution. In context, it is obvious that the Plan uses the term "the Court" to refer to the bankruptcy court specifically. Thus, the phrase in Paragraph 4.B—that no disbursements shall be made until "the Court" rules on this matter refers to the bankruptcy court and not any other (appellate) courts that might pass on the issue.

Further, while the Plan is silent on the issue, it is reasonable to construe the Plan to treat allowance and disallowance comparably. See Restatement (Second) of Contracts § 204 (1981) ("When the parties to a bargain sufficiently defined to be a contract have not agreed with respect to a term which is essential to a determination of their rights and duties, a term which is reasonable in the circumstances is supplied by the court"). Just as a ruling by the bankruptcy court allowing the claim results in a distribution within ten (10) days, a ruling disallowing the claim also should result in the return to the Debtor of the funds no longer needed to fund the Plan.

Therefore, on this point, I agree with the Debtor. The Plan itself terminates the stay of distribution pending appeal once the bankruptcy court has either allowed or disallowed the Claim. If any such stay is imposed, it must derive from another source.

* * * * * *

U. Whether Jordan's request is conceptualized as a request for a stay of the Disallowance Order's determination that Jordan does not hold an allowed claim or as an independent stay of the confirmation order, the issue is whether the court should issue a stay of a

4. Conceptualizing the request as a request for an independent injunction would make no difference. The standard for obtaining a stay pending appeal is essentially the same as that for obtaining a preliminary injunction. See Conestoga Wood Specialties Corp. v. Sec'y of U.S. Dep't of Health & Human Servs., 2013 WL 1277419, at *1 (3d Cir. Feb. 8, 2013); AARP v. E.E.O.C., 390 F.Supp.2d 437, 462 (E.D. Pa. 2005).

5. As instructed by the Revel court, I begin by evaluating the first two (2) stay factors. At the hearing, Jordan articulated two (2) asserted errors in my decision to disallow his claim, both of which are based on my rejection of Jordan's argument that the Debtor was bound by certain deemed admissions. While I believe that my rulings are correct and, more likely than not, will be affirmed on appeal, I am satisfied Jordan's argument requires serious consideration and has a "reasonable chance" of success, i.e., that it has a greater than negligible likelihood of success, even though it is less than 50%. See Revel, 802 F.3d at 568 & 571.

The question of irreparable harm is somewhat more complicated.

As a general proposition, damages in the form of loss of money is not considered to be irreparable harm. See, e.g., Minard Run Oil Co. v. U.S. Forest Serv., 670 F.3d 236, 255 (3d Cir. 2011), as amended (Mar. 7, 2012) (generally, a purely economic injury, compensable in money, does not satisfy the irreparable injury requirement, although an exception exists where the potential economic loss is so great as to threaten the existence of the movant's business); Acierno v. New Castle Cty., 40 F.3d 645, 653 (3d Cir. 1994) ("Economic loss does not constitute irreparable harm"). However, in ordinary civil cases, as well as bankruptcy cases, in which funds have been placed in escrow, the application of the general proposition has been relaxed.

As one court has observed in an interpleader context,

prior order pending appeal and may be evaluated under the traditional four (4) prong test for the issuances of stays pending appeal described in endnote 1, supra.[4]

■    V. The court finds that, subject to certain modifications and conditions, Jordan is entitled to a stay pending appeal.[5]

the court has the disputed funds already in its possession so that all parties are protected from the risk that another party will dissipate them or put them beyond the reach of the court and other parties. Stays pending appeal therefore do not appear to be unusual in such cases.

Life Ins. Co. of N. Am. v. Camm, 2007 WL 2492384, at *1 (S.D. Ind. Aug. 29, 2007); accord Palm Properties, LLC v. Metro. Nat. Bank, 2010 WL 2976157, at *2 (E.D. Ark. July 22, 2010). Similarly, when funds in dispute have been escrowed, courts have held that distribution of the escrow may constitute irreparable harm. See In re Flight Transp. Corp. Sec. Litig., 730 F.2d 1128, 1133–34 (8th Cir. 1984); Devon IT, Inc. v. IBM Corp., 2013 WL 6721748, at *8 (E.D. Pa. Dec. 20, 2013) (distribution of escrowed funds pending outcome of appeal constitutes irreparable harm).

In the bankruptcy context, courts have held that distributions to creditors, while a claim allowance dispute is on appeal, may constitute irreparable harm because it will dissipate the only assets available to satisfy the claim. See Reorganized California Power Exch. Corp. v. Pac. Gas & Elec. Co., 2015 WL 8614432, at *10 (N.D. Cal. Dec. 14, 2015); In re Klein Sleep Prod., Inc., 1994 WL 652459, at *1 (S.D.N.Y. Nov. 18, 1994); see also In re Greenig, 1996 WL 33401181, at *4 (Bankr. C.D. Ill. Oct. 2, 1996) (granting stay of distribution pending appeal of allowance of claim conditioned on debtors continuing to make plan payments).

The authorities cited above suggest that when an existing fund has been dedicated to satisfaction of competing claims, distribution of the fund before the court's determination is final and no longer subject to modification or reversal on appeal may constitute irreparable harm to the appellant. In the present case, in which funds were escrowed to insure the Debtor's ability to fulfill his obligations under his confirmed plan, I find the above principles compelling. The Debtor seeks a return of the

* * * * *

It is therefore **ORDERED** that:

1. The Motion is **GRANTED IN PART and DENIED IN PART**.

2. Subject to Paragraph 5 below, pending the outcome of the appeal of the Disallowance Order, and until such time as the Disallowance Order becomes final and no longer subject to modification or reversal on appeal, the Disallowance Order is **STAYED** and counsel for the Debtor shall retain $85,186.89 in his escrow account ("the Retained Escrow Funds").

3. The Debtor's counsel may release from the escrow account and pay over to the Debtor the sum of $14,813.11.[6]

4. As an alternative to the requirements of Paragraph 2, the Debtor shall cooperate with any request from Jordan to transfer the Retained Escrow Funds to a federally insured, interest bearing account, but in all other respects Paragraph 2 shall remain in full force and effect.

5. In the event that the Retained Escrow Funds are not transferred to a federally insured, interest bearing account pursuant to Paragraph 4 as of **October 24, 2016**, then, as a condition for the maintenance of the Stay provided in Paragraph 2 above, Jordan shall supplement the escrow account by paying interest into the account at the federal judgment rate.

6. As a condition of maintaining the Stay provided by Paragraph 2, **on or before October 31, 2016**, Jordan shall fulfill his obligation under Paragraph 5 by tendering to the Debtor's counsel for deposit into the escrow account one (1) year's interest on **$85,186.89** at the then federal judgment interest rate.

7. In the event that the Disallowance Order is not final and no longer subject to modification or reversal on appeal as of **October 31, 2017** and as of any successive year on that same date, as a condition for the maintenance of the Stay provided in Paragraph 2 above, Jordan shall tender to the Debtor's counsel for

---

total amount that will be necessary to complete the funding of the Plan in the event that the Disallowance Order is reversed on appeal. I perceive an inherent risk that the funds will be dissipated and the Debtor will be unable to fulfill his obligations under the Plan if Jordan is successful on appeal. In these circumstances, I conclude that here Jordan faces a danger of irreparable harm if the escrow is released.

With the first two (2) prongs of the test for a stay pending appeal satisfied, I turn to the third consideration—whether the stay would substantially harm other parties.

Here, the Debtor has made no showing of any particularized or immediate need for the Escrow Funds. In the absence of such a showing, and considering that distribution of the money may make it effectively impossible for Jordan to satisfy his claim if he is successful on appeal, I find that the balance of competing harms tips in favor of Jordan. Further, the impact of the maintenance of the escrow

pending appeal will be mitigated by my decision, see Paragraph 3, infra & accompanying endnote, to permit the release to the Debtor of a portion of the Escrow Funds.

Finally, in this private party dispute, I perceive no palpable public interest issue that favors either party.

Based on the foregoing, and subject to Paragraph 3, infra I conclude that Jordan has established grounds for staying distribution of the Escrow Funds to the Debtor.

**6.**    It is not entirely clear why **$100,000.00**, rather than **$85,186.89** was placed in escrow. However, the Plan has been confirmed and it provides expressly for payment of **$85,186.89**. (Plan ¶ 4.C.). At this point, I see no reason to hold up the return of any money in excess of the amount to pay Jordan's claim in the event that, following the appeal, his claim is allowed.

deposit into the escrow account an additional one (1) year's interest on $85,186.89 at the then federal judgment interest rate. All such additional payments required by this paragraph shall be tendered **on or before October 31st** of the given year.[7]

8. In the event that the Disallowance Order is affirmed and the Debtor becomes entitled to a distribution of the Retained Escrowed Funds, the Debtor's counsel shall return to Jordan any money he paid pursuant to Paragraphs 6 and 7 that is attributable to unearned interest.

**Case No. 13-20559-AMC**
**Adv. Proc. No. 14-361-AMC**

United States Bankruptcy Court,
E.D. Pennsylvania.

Signed October 13, 2016

7. Fed. R. Bankr. P. 8007(a)(1) mandates that a party must first request a stay pending appeal or approval of a supersedeas bond from the bankruptcy court. Oddly, Rule 8007(c) then omits the bankruptcy court when it states that the district court, bankruptcy appellate panel or court of appeals "may condition relief on filing a bond or other appropriate security with the bankruptcy court."

The power to grant a stay necessarily includes the authority to condition that relief. Therefore, notwithstanding the absence of an express reference to the bankruptcy court in Rule 8007(c), I conclude that I have the authority to condition the relief Jordan has requested in the Motion. See Chapman v. Citicorp Mortgage, Inc., 1992 WL 157499, at *6 (N.D. Ill. June 23, 1992) (affirming bankruptcy court order conditions imposed by the bankruptcy court in granting a stay pending appeal); accord In re Oakwood Homes Corp., 329 B.R. 19, 22–23 (D. Del. 2005) (same); see also Jersey Cent. Power & Light Co. v. Local Unions 327, 749, 1289, 1298, 1303, 1309 & 1314 of Int'l Bhd. of Elec. Workers, 1974 WL 21182, at *2 (D.N.J. Sept. 23, 1974); (conditioning stay pending appeal); In re Kohar, 525 B.R. 248, 255 (Bankr. W.D. Pa. 2015) (same).

In this case, while Jordan has satisfied the requirements for a stay pending appeal, (in large part to maintain the integrity of the escrow account), there is nonetheless a greater likelihood that the Debtor prevail on appeal and ultimately, will be entitled to the escrowed funds. If that comes to pass, the Debtor will have been deprived of the use of the money during the appellate process. In the exercise of my discretion, I consider it equitable and appropriate for Jordan to compensate the Debtor for the time value of the escrowed funds in the event that the appeals are unsuccessful. Paragraphs 4-7 are designed to implement that purpose.